Beinkerhoee, C. J.
This is a petition in error prosecuted in this court to obtain the reversal of a judgment in favor of the. defendants in error against the plaintiff in error, rendered by the superior court of Cincinnati at special term, and, on error, affirmed at general term.
The original action was brought by Kirk & Cheever against Mowry to recover damages for a breach of a contract of sale by Mowry of all the Ohio and Mississippi railroad bonds owned by him to Kirk & Cheever, the breach alleged being the non-delivery of the bonds purchased. Kirk & Cheever, plaintiffs below, had judgment for the difference between the alleged purchase price of the bonds and their market value at the time of the breach.
The contract of sale, if any was made, was made between Mowry and Kirk — the latter acting in behalf of his firm. Both parties seem to have been dealers in bonds and stocks. Kirk was a witness on behalf of his firm on the trial; and as the court and jury below were warranted in believing his statement of the transaction to be true and accurate, we will take his testimony as a statement of the facts of the case out of which the questions of law on which we are to pass arise. In his testimony, as it appears in the bill of exceptions, he says:
*379 “ On the 29th of May, 1863, in the afternoon, and after the close of business hours, I was sitting near the door of our office with Mr. Henry C. Lord, when the defendant [Mowry] came along and stopped in, and engaged in a business transaction with Mr. Lord. After this was through, Mr. Mowry ashed me what I would give for Ohio and Mississippi railroad bonds ? I told him that I would give twenty cents on the dollar, and asked him how many or how much he had? He said that he had the amount of about from twelve to fourteen thousand dollars, and that I could have them at that price; and I told him that I would take them. In a short time we separated. The next day, in the forenoon, 1 called at Mr. Mowry’s office and told him that I came for those Ohio and Mississippi railroad bonds. He remarked: ‘ I don’t know about that; ’ and got up and went back and brought out the bonds or certificates and showed them to me. I looked over them. There were twenty-five bonds of five hundred dollars each, with coupons attached, at six per cent interest, and $157.93 in scrip. I made a memorandum in pencil at the time, in looking over the papers, as I had them in my hands. Mr. Mowry said that he would deliver me one thousand dollars of the bonds, and that that was all he had agreed to sell me. I told him that he had sold me all he had. He denied it; and refused to deliver me more than one thousand dollars of the bonds. I refused to take the one thousand dollar’s of the bonds, but insisted on having all he had; and we separated.”
Oheever testified — and this was not disputed — that on the fifth of June, six days after the transactions related by Kirk in his testimony, he tendered to Mowry the agreed price for all the Ohio and Mississippi railroad bonds, and demanded them, but Mowry refused to deliver them, and z’e-fused the tender’.
After verdict for plaintiffs below, a motion for a new trial was made, on the ground that the verdict was against the law and the evidence, and that the court erred in its charge to the jury; which motion was ovezTuled, and a bill of excep *380 tions was taken setting out all the evidence, and also those parts of the charge of the court claimed to be erroneous.
The first proposition of law given in charge to the jury by the court below is in these words: “The agreement disclosed by the evidence, if complete in its terms, was binding on the parties, although no payment was made or offered, and no delivery of the article sold, made, or offered at the time. It is true that where there is an agreement for the sale of a chattel, and nothing is said about the time of the payment or the time of the delivery, there is a rale of law requiring the payment or delivery to be made or offered at once, or on the spot; but this may be modified by eiroumstaoices and the customs of trade. This transaction took place, as it appears in the evidence, about four o’clock in the afternoon, and after the close of business hours in the banks of the city. The railroad bonds in question, it appears, were kept by the defendant at his office or bank; and the plaintiff, Mr. Kirk, would not be reasonably presumed to have money enough in his pockets, or with him at the time, to make the payment required by the agreement. The law therefore allowed the plaintiffs a reasonable time to perform or consummate the agreement on their part; and if the plaintiff called on the defendant in the morning or forenoon the next day, during business horns, to complete or consummate the performance of the agreement on his part, it was in time to bind the defendant.”
In this part of the charge to the jury, it is claimed, in argument by counsel for plaintiff in error, that the court below erred; and it is insisted that the rule is strictly, as laid down by Blackstone and many other of the earlier writers, that “ if a man agrees with another for goods at a certain price, he may not carry them away before he hath paid for them; for it is no sale without payment, unless the contrary be expressly agreed; and, therefore, if the vendor says the price of a beast is four pounds, and the vendee says he will give five pounds, the bargain is struck, and they (neither of them) are at liberty to be off, provided immediate possession be tendered by the other side; but if neither the money be *381 paid, nor the goods delivered, nor tender made, nor any subsequent agreement be entered i/nto, it is no contract, and the owner may dispose of the goods as he pleases.”
In passing upon this question it is proper to observe that it is one to be determined upon the principles of the common law solely, as the provisions of ow statute of frauds have no bearing upon it.
We are of opinion that the court below did not err in this part of its charge to the jury. The rule, as above laid down by the ancient writers, is not now, in all its former strictness, held to be the common law as to what constitutes a sale of chattels. Treating of this subject, Mr. Benjamin, in his recent work on Sales, p. 218 et seq., says, “ The rules given by these ancient authors remain substantially the law of England to the present time, with but one exception. The maxim of Noy, that unless the money be paid ‘presently ’ there is no sale, except a day be expressly given for the payment, ... is not the law in modern times. The consideration for the sale may have been, and probably was, in those early days, the actual payment of the px’ice, but it has since been held to be the purchaser’s obligation to pay the price, where nothing shows a contrary intention. In Simmons v. Swift (5 B. & C. 862), Bayley, J., said: ‘Generally, where a bargain is made for the purchase of goods, and nothing is said about payment or delivery, the property passes immediately, so as to cast upon the purchaser all future risk, if nothing remains to be done to the goods, although he ca/nnot taJce them away without paying the price.’ So in Dickson v. Yates (5 Ad. & El. 313, 340), Parke, J., said, ‘ I take it to be clear that by the law of England the sale of a specific chattel passes the property in it to the vendee without delivery. Where there is a sale of goods generally, no property in them passes till delivery, because until then the very goods sold are not ascertained. But where, by the contract itself, the vendor appropriates to the vendee a specific chattel, and the latter thereby agrees to take that specific chattel, and to pay the stipulated price, the parties are then in the same situation as they would be after a delivery of goods in pursuance of a *382 general contract. The very appropriation of the chattel is equivalent to a delivery by the vendor, and the assent of the vendee to take the specific chattel and to pay the price is equivalent to his accepting possession. The effect of the contract, therefore, is to vest the property in the bargainee.” And Mr. Benjamin adds, “The principles so clearly stated by these two eminent judges are the undoubted law at the present time,” and cites numerous modern cases in support of his assumption. The case of Hooben v. Bidwell, 16 Ohio, 509, is to the same effect.
In the case before us the bargain was complete. The minds of the parties had met and were in accord. The subject-matter of the sale was specific (Heyworth v. Hutchinson, The Law Reports, Q. B., vol. 2, p. 447), requiring nothing to be done to designate or identify it.' It was all the Ohio and Mississippi railroad bonds which Mowry owned. The contract was subject to no condition, express or implied. The property in the bonds passed by virtue of the bargain, so that the future risk in respect to them was cast upon the vendees while the contract subsisted; and, under the circumstances of the case disclosed in the evidence and enumerated in the charge of the court below, that court was warranted in saying, and the jury in finding, that, though there was no express stipulation that payment by the vendees and delivery by the vendor was to be deferred until business hours on the following day, yet such must have been and was the understanding of the parties; and if Kirk had accompanied his demand for the bonds made by him on that day with a tender of the agreed price of them, it is clear that his right of action for a breach of contract would have been complete.
.But the court below further charged the jury that “the tender made by the plaintiff, Mr. Cheever ” [a week after the contract], “as shown in the evidence, was too late, — was not in a reasonable time. . . . But if, on being called on by the plaintiff Kirk the next morning after the agreement was made, the defendant denied the agreement, and refused to *383 perform on Ms part, this dispensed with the necessity of a tender.”
We agree with the court below in the opinion that the tender actually made by Gheever was too late. The contract was of such a nature, and in respect to such a subject-matter, as to render it evident that the parties in making it contemplated a prompt, and not a dilatory, execution of it on both sides; and a week’s delay, by either party, of any attempt to carry it into execution, would authorize the other in presuming and acting on the assumption that the former assented to its rescission and abandonment. But the court below further told the jury, that when “the defendant denied the agreement, and refused to perform on his part, this dispensed with the necessity of-a tender.” In this we think there was error. I can find no authority to sustain the proposition given to the jury. In the interview between Kirk and Mowry, the next morning after the bargain was made, Kirk simply demanded the bonds. He did not offer to pay for them, nor tender payment for them; nor does it even appear that he then had with him the money to pay for them. His right to demand and have possession of the bonds depended on his making or tendering payment, unless such payment or tender was waived by Mowry. Though the property in the bonds passed by the bargain, the right of possession did not pass without payment or its equivalent; and it seems to us that neither principle nor authority would authorize us to hold that the mere fact of a denial of the contract by the vendor alone amounted to a waiver of a tender of the price of the bonds. The vendor might well say to himself, “I deny the contract to be as it is claimed to be; but if it be insisted on as claimed, I still have the right to insist on payment before delivery.” And if, in a transaction of this kind, where prompt action was evidently contemplated by both parties, a week’s delay occurs in making either tender or payment, a rescission of the contract by the mutual consent of both parties may well be presumed in favor of either. Mutual delinquency gives rise to the presumption of mutual assent to *384 a rescission. See Parsons on Contracts, 667 et seq., and 16 Ohio St. 454.
It is contended by counsel for defendant in error, however, that inasmuch as the charge of the court below to the jury was not excepted to at the time, the plaintiff in error cannot here take advantage of any error in such charge. The ruling of this court in Kline & Berry v. Wynne, Haynes & Co., 10 Ohio St. 226, shows that this point is not well made. Here the whole case, evidence and all, is before us; and if the error of law, occurring at the trial, be such as to make the verdict contrary to law, a new trial should be.granted, though no exception was taken to the ruling of the court.”
Judgment reversed and cause remanded.
Scott, Welch, White, and Day, JJ., concurred.